**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED SPECIALTY INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-480** |
| **OLIVIA Y. TRUONG, RICHARD E. KING, JAMIE A. FUTRAL, MELCHIODE MARKS KING, LLC, AND ABC INSURANCE COMPANY** | **SECTION "B"(4)** |

## ORDER AND REASONS

Before the Court are defendants' "Rule 12(b) Motion to Dismiss and Rule 12(e) Motion for More Definite Statement" (Rec. Doc. 20), plaintiff's opposition (Rec. Doc. 23) and defendants' reply (Rec. Doc. 26). For the following reasons,

**IT IS ORDERED** that the motion (Rec. Doc. 20) is **GRANTED IN PART** on Rule 12(b)(6) grounds and **DENIED IN PART** as to the request for dismissal on either Rule 12(b)(1) or 12(b)(7) grounds as well as the alternative Rule 12(e) motion.

## FACTS AND PROCEDURAL HISTORY

This action involves a legal malpractice claim against defendants Olivia Y. Truong, Richard E. King, Melchiode Marks King, LLC and Jamie Futral (collectively "defendants"). Rec. Doc. 1. On or about January 15, 2018, plaintiff United Specialty Insurance Company ("United"), through its Managing General Agent QEO Insurance Group ("QEO"), retained defendants as counsel in the matter entitled *Diane Jackson v. United Specialty Insurance*

1

*Company, Vic 3 Enterprises, LLC and Napoleon White* ("the Underlying Suit"). *Id.* at 3.[1]

On or about August 26, 2019 through August 29, 2019, a jury trial on the merits was held in the underlying suit, concluding with a verdict in favor of Dianne Jackson and against United in the amount of $1,632,192.24 plus interest thereon and court costs. *Id.* at 5. According to the instant complaint, defendants approved the judgment casting United for the entire amount, instead of its policy limit of $1,000,000 plus interest and court costs. *Id.*

Defendants then filed a motion for judgment notwithstanding the verdict or alternatively for a new trial on behalf of United, which was ultimately denied on November 15, 2019. *Id.* at 6. On December 19, 2019, defendants filed a notice and motion for suspensive appeal. *Id.* Defendants untimely furnished security by way of surety bond on January 16, 2020 – 28 days after the deadline set forth in Louisiana Civil Code article 2123. *Id.* Moreover, the surety bond was in the amount of $1,800,000 and bound only United and not its co-defendants in the underlying suit, who were also found liable. *Id.*

On or about January 24, 2020, plaintiff Jackson in the underlying suit moved to dismiss defendants' suspensive appeal, which was later granted on March 5, 2020 because the appeal bond

---

[1] *Dianne Jackson v. United Specialty Insurance Company, Vic 3 Enterprises, LLC, et al.*, Docket No. 71668 (La. 40th Jud. Dist. Ct.).

was not timely posted. *Id.* at 7.  According to United, defendants failed to reasonably consult with it about the motion to dismiss, its denial, and defendants' recommendation to file a supervisory writ application. *Id.*

On or about April 14, 2020, defendants filed a notice of intent to apply for supervisory writ regarding the motion to dismiss. *Id.* at 8.  On or about May 13, 2020, the Louisiana Fifth Circuit Court of Appeals denied the writ application, based on the untimely security furnishing. *Id.*  The appellate court further affirmed the lower court's dismissal of the suspensive appeal and converted the appeal to a devolutive appeal for which security is not required. *Id.*

About two months after the appellate court's decision, on July 10, 2020, United's insurance representative contacted defendant Olivia Truong about the writ application to which Truong responded, "It completely slipped my mind to forward the writ denial, which is attached for your file (sorry!)." *Id.*  Per plaintiff, because of defendants' delayed notice of the writ denial and failure to advise them accordingly, United was unable to challenge the writ denial with the Louisiana Supreme Court. *Id.* at 8-9.

Moreover, the conversion of the suspensive appeal to a devolutive appeal caused the August 29, 2019 judgment to be executed immediately by Jackson. *Id.* at 9.  Thus, Jackson filed

a motion to examine judgment debtor against United and its co-defendants and a complaint against United alone with the Louisiana Department of Insurance, alleging failure to pay a valid final judgment. *Id.* On or about September 28, 2020, Truong received a demand letter from Jackson's counsel for payment of $1,903,986.37 from plaintiff. *Id*. In November 2020, Jackson also filed two petitions for garnishment in the underlying state action, requesting issuance of a *writ of fieri facias* to seize and possess all property rights and credits of United and its insured Napoleon White. *Id.* at 9-10.

On or about November 29, 2020, Jackson seized three dump trucks belonging to Vic 3, United's insured and co-defendant, which effectively put Vic 3 out of business. *Id.* at 10. Thereafter, United paid the full value of the judgment to secure the return of Vic 3's trucks. *Id.* On December 10, 2020, defendants' attorney-client relationship with plaintiff ended. *Id.* at 5. Both parties indicate that the underlying matter is currently pending on appeal before the Louisiana Fifth Circuit Court of Appeal. Rec. Doc. 23 at 7.[2]

On March 8, 2021, United filed a negligence cause of action against defendants in this Court based on diversity jurisdiction. Rec. Doc. 1 at 2. On May, 31, 2021, defendants filed the pending

---

[2] *See Dianne Jackson v. Underwriters at Lloyd's of London, Vic 3 Enterprises, LLC, et al.*, App. No. 21-CA-15 (La. App. 5th Cir.).

motion to dismiss for lack of subject matter jurisdiction, for failure to state a claim, and for failure to join an indispensable party, QEO Group, LLC.  Rec. Doc. 20.  Alternatively, defendants move for a more definite statement under Rule 12(e), arguing that the factual basis, measure of damages, and legal theory in this matter are unclear.  Rec. Doc. 20-1 at 2.

On June 15, 2021, United timely filed its opposition.  Rec. Doc. 23.  In general, it denies defendants' allegations. Additionally, United argues that its damages exceed the required amount in controversy as it is entitled to recover the paid judgment in excess of $1,900,000, attorney's fees associated in the underlying suit, and damages to its reputation.  *Id.* at 7.

On June 28, 2021, defendants were granted leave to file a reply.  Rec. Doc. 26.  Because the underlying judgment was solely rendered against United, Vic 3, and White, defendants deny any responsibility to United to repay the damages owed to Jackson. *Id*. at 2.  Moreover, defendants contend that United is not entitled to damages for mental anguish, embarrassment, or damage to reputation because such damages were not originally requested in the complaint and cannot be incurred by corporations.  *Id.* at 2-3.

**LAW AND DISCUSSION**

**A. Rule 12(b)(1) Subject Matter Jurisdiction**

When a movant files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Under Federal Rule of Civil Procedure 12(b)(1), "a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)" except that the Rule 12(b)(1)standard permits the Court to consider a broader range of materials in considering its subject matter jurisdiction over the cause(s) in the suit. *Williams v. Wynne*, 533 F.3d 360, 364-65 (5th Cir. 2008).

A district court may dismiss for lack of subject matter jurisdiction on any one of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence.  *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)).  A Rule 12(b)(1) motion will be granted only "if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."  *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012) (citing omitted).

A party may "facially" or "factually" attack the basis of the Court's subject matter jurisdiction on a Rule 12(b)(1) motion. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted).  When the moving party makes a "facial attack," it limits its arguments to the four corners of the complaint and urges the Court "merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, [when] ... the allegations in his complaint are taken as true for purposes of the motion." *Id.*  Conversely, a "factual attack" goes beyond the pleadings and challenges "the existence of subject matter jurisdiction in fact." *Id.*  Here, defendants argue that plaintiff's claims are facially deficient in that the amount in controversy is not satisfied.  Rec. Doc. 20-1 at 5.  Thus, they are asserting a facial attack on this Court's subject matter jurisdiction.

District courts have original jurisdiction, called diversity jurisdiction, over a civil action where the matter in controversy exceeds $75,000 and is between citizens of different states.   28 U.S.C. § 1332(a).  If the complaint does not set forth a specific amount of damages, "the party invoking federal jurisdiction bears the burden of proving its existence, but a sum claimed by the plaintiff controls the amount in controversy if the claim is apparently made in good faith." *Meisner v. Allstate Ins. Co.*, No. 10-1837, 2010 WL 4026381, at *1 (E.D.La. Oct. 13, 2010)(citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).  The court should dismiss the claim if it appears "to a legal certainty that the claim is really less than the jurisdictional amount." *Meisner*, 2010 WL 4026381, at *1.

Defendants argue that plaintiff United fails to satisfy that the damages asserted exceed the federal threshold because it involves a money judgment that was not originally rendered against defendants but on the plaintiff and its insured.  Rec. Doc. 20-1 at 6.   On the contrary, plaintiff argues that defendants' negligence caused plaintiff to pay for the $1,900,000 money judgment in its entirety, among other damages including attorney's fees.  Rec. Doc. 23 at 6-7.

In *Brown v. Buerger*, the plaintiff sought to recover the $15,000 verdict rendered against him, allegedly caused by the law firm's negligent representation.  No. 05-1461, 2005 WL 2487949, at

*1 (W.D. La. Oct. 7, 2005).  The court determined that it was not facially apparent from the complaint that the money judgment and attorney's fees related to the underlying case and appeal were in excess of $75,000.  *Id.* at *2.  Because the court assessed the value of the underlying judgment and attorney's fees incurred therein, we would interpret the holding in *Brown* to mean that such amounts can be relevant evidence to the amount in controversy in legal malpractice claims.  *Id.*

Likewise in *Ashy*, the court held that the plaintiff incurred actual damages by way of a final judgment when the defendant attorney failed to join the plaintiff's insurers as co-defendants in the underlying suit, causing his client to be cast in a $395,843 judgment.  *Atlas Iron and Metal Co. v. Ashy*, 2005-458 (La. App. 3 Cir. 1/4/06), 918 So.2d 1205, 1213.  Thus, the court found that the plaintiff had a viable legal malpractice claim based on the final judgment issued by the trial court, regardless that it was not originally rendered against the attorney.  *Id.*

Plaintiff herein seeks recovery from defendants for the $1,900,000 judgment it was compelled to pay after defendants failed to timely post bond.  Rec. Doc. 1 at 9.  Although we recognize that defendants were not parties to the underlying action, they have not cited to nor was this Court able to identify a case that distinctly holds that the underlying judgment that is the object of the legal malpractice claim may *not* be considered part of the

amount in controversy.  Moreover, it is facially apparent from the complaint that plaintiff's claims associated with defendants' failure to timely post the surety bond exceed the jurisdictional amount.[3]  *Id.* at 8-9.  Therefore, we find that plaintiff has satisfied the amount in controversy requirement of 28 U.S.C. § 1332(a).[4]

Defendants also allege that plaintiff omitted to join a necessary party to avoid destroying complete diversity.  Rec. Doc. 20-1 at 8.  Thus, whether this Court has subject matter jurisdiction depends on our resolution of defendants' Rule 12(b)(7) motion, and as such, we will turn to that motion's merits.

## B. Rule 12(b)(7) Failure to Join a Party Under Rule 19

Federal Rule of Civil Procedure 19 calls for the "joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue."  *Orpheum Property, Inc. v. Coscina*, No. 17-6480, 2018 WL 1518471, at *3 (E.D. La. Mar. 28, 2018)(citing Fed. R. Civ. P. 19(a)).  There are

---

[3] The Court also considered whether a potential standing argument could be made here in view of pending appeal in the underlying lawsuit before the Louisiana Fifth Circuit Court of Appeals. *See* Rec. Doc. 20-1 at 7, n. 14. We ultimately found that such an argument would be unsuccessful because United has adequately plead that it incurred actual damages in this matter. A viable cause of action in legal malpractice exists where the claimant suffers "any appreciable and actual harm flowing from the lawyer's negligent conduct." *Smith v. Boothe*, 28,065 (La.App. 2 Cir. 2/28/96), 669 So.2d 682, 684. Such damages need not be final or even fully realized in the underlying case before the client's malpractice tort claim is ripe. *Id.*

[4] Because the value of the underlying judgment exceeds the statutory threshold to sustain subject matter jurisdiction, we need not consider defendants' other arguments concerning plaintiff's attorney's fees in the underlying case and mental anguish damages.

two relevant inquiries pertaining to whether the party should be joined in the lawsuit and if so, whether that party is indispensable.  Fed. R. Civ. P. 19.

Under Rule 19(a), joinder of a party is necessary if (1) in the person's absence, complete relief cannot be accorded among the existing parties, or (2) the person claims an interest relating to the subject of the action that could either be impaired or present a risk of incurring multiple or otherwise inconsistent obligations.  Fed. R. Civ. P. 19(a).

As to this first inquiry, defendants argue that QEO is a necessary defendant in this litigation under Louisiana's comparative fault scheme.  Rec. Doc. 20-1 at 18-19.  Pursuant to La. Civ. Code art. 2323, "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty[.]"  La. Civ. Code art. 2323; *see Kelly v. Scottsdale Ins. Co.*, No. 08-651-B-M2, 2008 WL 11412012, at *3 (M.D. La. Dec. 8, 2008) (finding that the uninsured motorist is not an indispensable party because fault can be allocated to him as a non-party under Louisiana's comparative fault standard).  "The fundamental purpose of Louisiana's comparative fault scheme is to ensure that each tortfeasor is responsible only for that portion of the damage he has caused."  *Miller v. LAMMICO*, 2007-1352 (La. 1/16/08), 973 So.2d 693, 706.

Here, defendants argue that QEO should be joined as a defendant in this matter because QEO retained defendants' services on behalf of plaintiff and was the party to whom defendants reported during the underlying litigation. Rec. Doc. 20-1 at 20. Additionally, defendants allege that it was QEO's conduct that caused delays associated with the appeal bond and created internal conflict between the instant parties. *Id.*

In response, plaintiff argues that QEO is not a required defendant to proceed here because a jury that finds QEO responsible in the breakdown of the attorney-client relationship can allocate fault accordingly without joining it as a party. Rec. Doc. 23 at 8. Furthermore, if QEO was deemed a necessary party, plaintiff asserts that QEO would need to proceed as its co-plaintiff because they share the same interests in this suit. *Id.*

If joinder is warranted under Rule 19(a), then the party will be brought into the lawsuit, unless such joinder would destroy the court's jurisdiction. *Orpheum Property*, 2018 WL 1518471, at *3. Under such a circumstance, the court must consider the Rule 19(b) factors to determine whether the dispute can press forward without the party or dismiss the litigation altogether. *Id.* These factors include (1) prejudice to the absent or present parties; (2) whether the shaping of relief can lessen the prejudice; (3) whether adequate relief can be given without the absent party; and (4) whether the plaintiff has another effective forum if the suit is

dismissed. *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997) (citing Fed. R. Civ. P. 19(b)).

We find that QEO is not a necessary defendant in this matter because a jury, if it deems proper, may allocate fault to QEO as a non-party under Louisiana's law of comparative fault. La. Civ. Code art. 2323. Even if QEO is joined as a plaintiff, we are unable to conclude that it is an indispensable party because QEO and plaintiff's interests overlap insofar that QEO's claims would be properly adjudicated by plaintiff's presence herein. As such, no prejudice would be suffered by either party and relief can be accorded in QEO's absence. Therefore, defendants' Rule 12(b)(7) motion to dismiss for failure to join an indispensable party is denied.

Furthermore, because Rule 19 does not require QEO's joinder as either a plaintiff or defendant, complete diversity between the existing parties remains intact. United has met its burden in establishing complete diversity and an amount in controversy exceeding $75,000. Therefore, defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied.

C. **Peremptive Period for Legal Malpractice Claims**

As a preliminary matter, defendants claim that plaintiff's legal malpractice claim has prescribed and is untimely. Rec. Doc. 20-1 at 11. Louisiana Revised Statute § 9:5605 governs the applicable prescriptive periods for filing a legal malpractice

13

claim, namely one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission, or neglect. La. Rev. Stat. § 9:5605. Because the prescriptive periods governing legal malpractice claims are peremptory, "both the underlying cause of action and the legal right to bring that cause of action dissolve at the end of the specified periods of limitation." *Schonekas, Winsberg, Evans & McGoey, L.L.C. v. Cashman*, 11-449 (La. App. 5 Cir. 12/28/11), 83 So.3d 154, 158.

"The peremption period for a legal malpractice action begins to run when a client knew or should have known that a lawyer's actions or inaction may cause the client to incur damages, thereby creating a cause of action for legal malpractice." *Id.* (citing *Teague v. St. Paul Fire and Marine Ins. Co.*, 2007-1384 (La. 2/1/08), 974 So.2d 1266, 1276). Thus, "a claimant's mere apprehension that something may be wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice." *Teague*, 974 So.2d at 1276.

In *Teague*, the plaintiff brought a legal malpractice claim arising from his attorney's failure to post the jury bond in the underlying action, which precipitated a settlement without the plaintiff's consent. *Id.* at 1269. The Louisiana Supreme Court

determined that neither the date the attorney failed to post the jury bond nor the date when the unapproved settlement was reached triggered the peremptive period because the plaintiff did not know of the underlying facts and circumstances leading to the parties' settlement. *Id.* at 1276. As such, the court held that the peremption commenced when another attorney, who investigated the matter, informed the plaintiff of the defendant's acts of legal malpractice. *Id.* at 1278; *see Lewis v. Album*, 12-584 (La. App. 5 Cir. 4/10/13), 114 So.3d 1155, 1157 (holding that peremption period for plaintiff's legal malpractice claim commenced when defendant attorney informed him that the underlying case had been dismissed as abandoned).

Here, defendants submit three events that allegedly triggered the instant peremptive period: (1) December 18, 2019, one day prior to the 30-day suspensive appeal deadline; (2) December 20, 2019, the expiration of the 30-day period; and (3) January 16, 2020, the date upon which defendant furnished the surety bond. Rec. Doc. 20-1 at 13. As defendants noted, one year from each event predates the March 8, 2021 date upon which plaintiff filed its complaint. *Id.* at 14. Defendants also refute plaintiff's contention that it did not know of the time delays associated with suspensive appeals by pointing to three emails, dating as early as November 20, 2019, from Truong to QEO's representative Vicky Forsythe containing

15

information of that nature.  Rec. Doc. 26 at 8; *see also* Rec. Docs. 23-1, 23-2, 23-3.

According to plaintiff, on March 9, 2020, Truong notified Forsythe, who would later inform United, that the court granted Jackson's motion to dismiss the suspensive appeal, but she represented that the surety bond was timely posted and that they intend to file a supervisory writ.  *Id.*  Plaintiff avers that it became aware of the alleged malpractice on July 10, 2020 when Truong forwarded the Louisiana Fifth Circuit's writ denial to the same QEO agent via email.  *Id.* at 20-21.  Plaintiff asserts that Truong's failure to notify United of the appellate court's writ denial for two months thereafter cost United an opportunity to challenge the denial with the Louisiana Supreme Court.  *Id.* at 21.  Thus, plaintiff maintains that it timely filed its complaint within the one year of July 10, 2020.  *Id.*

During each event identified by defendants, defendants do not provide any reason to suggest that plaintiff knew or should have known of the alleged acts of malpractice.  Truong's emails to Forsythe on the applicable law on suspensive appeals does not establish United's actual or constructive knowledge of the purported malpractice, particularly considering Truong's March 9, 2020 correspondence indicating that the surety bond was timely posted.  Accordingly, like in *Teague*, United did not become aware of its lost opportunity to challenge the appellate court's decision

until Truong's July 10, 2020 email informing Forsythe two months
following the writ denial.  Because the peremptive period began to
run from the July 10, 2020 event, plaintiff's complaint was timely
filed on March 8, 2021, and we may now turn to the merits of
defendants' Rule 12(b)(6) motion.

D. **Rule 12(b)(6) Failure to State a Claim**

To survive a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6), a plaintiff's complaint "must contain enough
facts to state a claim to relief that is plausible on its face."
*Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal
quotes omitted)).  A claim is facially plausible when the plaintiff
pleads facts that allow the court to "draw the reasonable inference
that the defendant is liable for the misconduct alleged."  *Id.*  A
court must accept all well-pleaded facts as true and must draw all
reasonable inferences in favor of the plaintiff.  *Lormand v. U.S.
Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*,
75 F.3d 190, 196 (5th Cir. 1996).  However, the court is not bound
to accept as true legal conclusions couched as factual allegations.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[C]onclusory
allegations or legal conclusions masquerading as factual
conclusions will not suffice to prevent a motion to dismiss."
*Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

To state a legal malpractice claim, the plaintiff bears the burden of showing: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *Teague*, 974 So.2d at 1272. While it is undisputed that an attorney-client relationship existed between the above parties, defendants deny acting negligently in their representation and that their representation caused plaintiff damages. Rec. Doc. 20-1 at 4, 14.

"A legal malpractice claim in Louisiana is a negligence claim, albeit a professional negligence claim, and thus derives from La. C.C. arts. 2315 and 2316." *Ewing v. Westport Ins. Corp.*, 2020-00339 (La. 11/19/20), 315 So.3d 175, 182. Thus, a claimant is required to establish each element of negligence under Louisiana's duty-risk approach, namely a duty, breach, cause-in-fact, legal cause or scope of duty, and damages. *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408 (La. 3/16/10), 35 So.3d 230, 240.

1. Duty

"Louisiana law makes clear that the duties owed by an attorney to his client transcend the bounds of an ordinary contractual relationship." *Curb Records v. Adams & Reese L.L.P.*, 203 F.3d 828, 1999 WL 1240800, at *4 (5th Cir. Nov. 29, 1999). "In no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client." *Teague*, 974 So.2d at 1271 (citing *Scheffler v. Adams and Reese, LLP*, 06-1774

(La. 2/22/07), 950 So.2d 641, 652).   Generally, attorneys are expected to provide competent representation and act with reasonable diligence and promptness in representing their clients' interests.   *Teague*, 974 So.2d at 1271.   In doing so, attorneys must also "exercise independent professional judgment and render candid advice."   *Id.* at 1271-72.

When an attorney represents multiple clients in the same matter, Louisiana's Rules of Professional Conduct prohibit an attorney from representing a client where such representation "may be materially limited by the lawyer's responsibility to another client or to a third person, or by the lawyer's own interests." *Id.* at 1272 (citing Rules of Professional Conduct 1.7(a)(2)). However, it is important to note that "proof of a violation of an ethical rule by an attorney, standing alone, does not constitute actionable legal malpractice *per se* or proof of actual causation." *Leonard v. Reeves*, 2011-1009 (La. App. 1 Cir. 1/12/12), 82 So.3d 1250, 1257.   Nevertheless, the Rules of Professional Conduct may be relevant in defining the applicable standard of care, depending on the circumstances of the relationship.   *Id*.

In *Teague*, defendant-attorneys represented both the plaintiff and his insurance carrier in the underlying action but only revealed to the insurance representatives that defendants failed to timely post a jury bond and would attempt to settle the case. *Teague*, 974 So.2d at 1272. While regularly

19

reporting to the insurance carrier who retained their services, the court found that defendants nevertheless owed the same fiduciary duty to the plaintiff to reasonably inform him of the status and intended litigation strategies of his case. *Id.*

Similarly, in *Curb Records*, lead counsel in California hired local counsel, who was admitted to practice before this Court, in the plaintiff's underlying copyright action but instructed local counsel to never contact the client directly. *Curb Records*, 1999 WL 1240800, at *1. The plaintiff brought a legal malpractice suit against local counsel and his firm for failing to inform the record label of lead counsel's discovery defaults that compelled an unfavorable settlement. *Id.* The Fifth Circuit determined that local counsel had a duty to inform the client of any "significant developments during the course of the representation", regardless of lead counsel's express instructions. *Id.* at *5.

In this dispute, defendants argue that they did not owe a duty to plaintiff to ensure that the state court's bond order complied with law and was free of "judicial mistakes." Rec. Doc. 20-1 at 15. Further, defendants assert that QEO's "Guidelines for Attorneys" restricted defendants' ability to act within their duty to United because they could not do so without QEO's authorization. *Id.*; Rec. Doc. 26 at 6. Defendants contend that QEO's presence and subsequent interference with defendants' tactical decisions in

the underlying litigation ultimately caused the breakdown of the parties' attorney-client relationship.  Rec. Doc. 26 at 6.

Plaintiff contends that defendants owed a duty to reasonably inform United of the status of the case and provide sufficient information supporting their intended course of conduct in furtherance of their collective litigation goals.  Rec. Doc. 23 at 15.  Moreover, plaintiff appears to suggest that part and parcel to defendants' duty to render competent representation is a duty to review the underlying judgment and prevent United from being cast in judgment exceeding their policy limits.  *Id.*

We find that plaintiff sufficiently asserts within its complaint that defendants owed a duty to render competent representation, which encompasses a duty to reasonably inform United of the status of the case and render advice accordingly. This Court is unpersuaded by defendants' assertion that their duty to United was somehow limited by QEO's internal policies. Defendants also owed plaintiff a duty to act with reasonable diligence and promptness in their representation, which covers their responsibility to timely post security.  As demonstrated in *Teague* and *Curb Records*, defendants' foremost duty in the underlying action was to represent the interests of United and its insured and not those of QEO as a third party who retained defendants' services.

2. <u>Breach of Duty</u>

While "an attorney is not required to exercise perfect judgment in every instance," the plaintiff must show that "the attorney failed to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." *Belanger v. Spencer H. Calahan, L.L.C.*, 2020-0763 (La. App. 1 Cir. 4/16/21), __ So.3d __, 2021 WL 1439965, at *3.

The *Teague* court found it "most telling" that the plaintiff's insurer, but not the plaintiff himself, was apprised of defendants' settlement strategy to rectify their failure to secure a jury trial. *Teague*, 974 So.2d at 1272. Because defendants nevertheless failed to inform the plaintiff of their intended strategies in his case, the court held that they breached their fiduciary duty by failing to keep him reasonably informed. *Id.*

Here, United seeks to establish a breach of duty by alleging that defendants failed to advise plaintiff of the applicable time delays for filing a suspensive bond appeal and to timely furnish the security related to their suspensive appeal. Rec. Doc. 23 at 15-16. Moreover, United alleges that defendants' failure to review the underlying judgment casting United in excess of its policy limits breached defendants' duty to act as prudent attorneys. *Id.* at 16.

Defendants argue that plaintiff's own evidentiary support, namely Truong's emails to Forsythe, belies their assertions that defendants breached their duty to inform their client. Rec. Doc. 26 at 6-7; *see* Rec. Docs. 23-1, 23-2, 23-3. Moreover, defendants argue that they acted reasonably within their contractual duty with QEO to not proceed on behalf of United without QEO's authorization, and in that regard, defendants did not receive authorization to obtain a bond until January 15, 2020 – nearly a month after the bond filing deadline. Rec. Doc. 26 at 8; *see* Rec. Doc. 26-5.

To the extent that defendants failed to inform plaintiff of the time delays for posting security for a suspensive appeal, it is unclear in both plaintiff's complaint and opposition whether Forsythe forwarded the relevant information provided by Truong to United representatives. Therefore, we cannot definitively conclude that defendants breached their duty to reasonably inform United of the applicable law and their intended course of conduct.

However, the *Teague* court makes clear that an attorney's duty to a third party cannot restrict her foremost duty to her client. As such, defendants' argument that they were without QEO's authorization to post the surety bond in United's case is without merit because defendants nevertheless had a duty to act promptly and exercise independent professional judgment as United's attorneys. Despite their clear awareness of the looming statutory

deadline, defendants breached their fiduciary duty to United in not acting promptly to prevent Jackson's immediate interim execution on the excess judgment by timely filing the required bond. Additionally, the complaint is clear that defendants breached their duty to reasonably inform United about the subsequent denial of the supervisory writ because defendants did not timely inform either United or QEO of this decision. Therefore, plaintiff has adequately alleged a breach of duty.

### 3. Cause-in-Fact

In legal malpractice claims, "an attorney is liable to his client for the damages caused by the attorney's negligence in handling the client's business, providing that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed." *Holland v. Hornyak*, 07-394 (La. App. 5 Cir. 11/27/07), 971 So.2d 1227, 1231 (citing *Bauer v. Dyer*, 00-1778 (La. App. 5 Cir. 2/28/01), 782 So.2d 1133, *writ denied*, 01-0822 (La. 5/25/01), 793 So.2d 162). "The proper method of determining whether an attorney's malpractice is a cause in fact of damages to his client is whether the performance of that act would have prevented the damage." *Holland*, 971 So.2d at 1231.

However, "if the alleged loss would have resulted irrespective of any alleged negligence, that alleged negligence is not actionable as a substantial factor or a cause in fact." *Colonial Freight Systems, Inc. v. Adams & Reese LLP*, No. 11-1755,

2012 WL 1570103, at *2 (E.D. La. May 3, 2012) (Milazzo, J.).  Thus, "simply establishing that an attorney was negligent, whether based upon the failure to conform to an ethical rule or some other standard, would not be sufficient to state a cause of action for legal malpractice."  *Id.*

In *Colonial Freight Systems*, this Court held that the plaintiff was unable to prove that its losses were caused by its attorneys' failure to secure a jury trial.  *Id.* at *3.  Regardless that the plaintiff felt compelled to settle its underlying case, this Court found that establishing causation solely based on the potential of an adverse judgment in a bench trial versus a jury trial was speculative in nature.  *Id.*

United alleges that its losses arise from defendants' failure to timely furnish the surety bond to secure a suspensive appeal. Rec. Doc. 23 at 17.  Under Louisiana law, a suspensive appeal suspends the effect or execution of an appealable judgment.  La. Civ. Code Proc. art. 2123.  Unlike for devolutive appeals, the appellant must furnish security for a suspensive appeal, which provides that the surety is liable for the amount of the judgment. La. Civ. Code Proc. art. 2124.  "The purpose of the requirement of security for a suspensive appeal is to protect the judgment creditor against the insolvency of the judgment debtor during the course of the appeal."  *Wright v. Jefferson Roofing, Inc.*, 630 So.2d 773, 775 (La. 1994).

If the appellant fails to furnish the necessary security timely, "the right vests in the appellee to obtain dismissal of the suspensive appeal and to secure thereby the right to execute on the judgment." *Id*. The appellant's failure to timely furnish security does not render the suspensive appeal invalid but may serve as the basis for the appellee to move for dismissal of the suspensive appeal. *Clement v. Graves*, 2004-1831 (La. App. 1 Cir. 9/28/05), 924 So.2d 196, 200. Moreover, the suspensive appeal will be converted to a devolutive appeal, assuming the appellant meets the latter's statutory requirements. *Id*.

Had defendants timely posted the necessary security to file a suspensive appeal, the underlying plaintiff, Ms. Jackson, would have not been able to immediately execute the judgment to the detriment of Vic 3 Enterprises, United's insured and co-defendant. However, considering the procedural history of the underlying action, it cannot be said that posting the surety bond would have necessarily prevented United from *eventually* having to pay the judgment on behalf of the insured defendants. United and the other parties in the underlying suit stipulated to the issue of liability, declaring Mr. White to be "the sole cause of the Incident." *See* Rec. Doc. 20-1 at 3; *see also* Rec. Doc. 20-4 at 1. Thus, in view of the stipulation of liability against White, United was found solidarily and jointly liable in the judgment rendered against them. Rec. Docs. 20-3, 20-6. By virtue of being White's

insurance carrier, United agreed to indemnify its insured for the resultant damages, at least up to the policy limit, irrespective of defendants' alleged negligence.[5] *See* Rec. Doc. 20-4 at 26.

Moreover, even if the $1,800,000 bond was timely posted, United would have nevertheless been liable for the full amount of the judgment if affirmed on appeal. *See Bowen v. Government Employees Ins. Co.*, 451 So.2d 1196, 1198 (La. App. 5 Cir. 1984)("If the insurer were to post a bond on the entire amount of the judgment and the case was affirmed on appeal, the insurer would be liable on the bond for the entire amount of the judgment."). According to defendants, their failure respective to the surety bond arose from QEO's lack of authorization to not only obtain the appeal bond but also to confirm whether United would be either indemnifying the full amount or a portion up to the policy limit. Rec. Doc. 20-1 at 17; *see generally* Rec. Doc. 26-4. QEO ultimately authorized the $1,800,000 bond in excess of United's $1,000,000 policy limit, which, if timely posted and accepted by the court, would have bound United for the entire judgment. *Id.; see* Rec. Doc. 26-5.

---

[5] Defendants also allege that QEO denied them authority to settle the underlying suit prior to trial and that "upon information and belief" the matter could have been settled for less than half of the policy limits. Rec. Doc. 20-1 at 17. Defendants further allege that QEO instead opted to "gamble and forced a jury trial." *Id.* Without any evidentiary support in that regard, we cannot consider such an argument.

Additionally, plaintiff fails to allege factual support showing a nexus between defendants' negligence and United's damages for embarrassment and damage to reputation. *See* Rec. Doc. 23 at 19. Louisiana courts have expressly held that "a corporate plaintiff cannot experience mental anguish" and the like (i.e, humiliation and embarrassment). *Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc.*, 430 So.2d 696, 704 (La.App. 2 Cir. 1983)(citing *M & A Farms Ltd. v. Town of Ville Platte*, 422 So.2d 708 (La. App. 3 Cir. 1983)). As noted by defendants, United asserts for the first time in its opposition damages for embarrassment and damage to reputation suffered when Jackson filed a complaint with the Louisiana Department of Insurance. Rec. Doc. 23 at 2, 7, 18-19. However, United does not provide any additional evidentiary or factual support to indicate that it suffered embarrassment and damage to its reputation resulting from the complaint.

### 4. Legal Cause/Scope of the Duty

In addition to establishing causation in fact, the claimant must also show that the attorney's breach was the legal cause of its injuries. *Leonard*, 82 So.3d at 1263. Legal cause involves "a policy question as to whether the particular risk falls within the scope of the duty." *Simmons v. CTL Distribution*, 03-1301 (La.App. 5 Cir. 2/23/04), 868 So.2d 918, 924. This policy question begets consideration of "how easily the risk of injury to plaintiff can

28

be associated with the duty sought to be enforced." *Id.* at 925. "Legal or proximate cause, or scope of duty, normally does not present a significant or serious problem in a legal malpractice case." *Leonard*, 82 So.3d at 1263.  "However, it may provide practical and intellectual challenges to the client, lawyer, judge, and jury." *Id.*

According to United, an attorney's duties to exercise a degree of care, skill and diligence is "intended to protect clients from missing filing deadlines and having their cases adjudicated properly." Rec. Doc. 23 at 18.  Contrarily, defendants argue that their omission to timely post bond does not fall within the scope of their duty because United expressly admitted to liability in the underlying action.  Rec. Doc. 20-1 at 17.

Under Louisiana law "when an appellant fails to file a suspensive appeal from a final judgment timely, the judgment does not thereby acquire the authority of the thing adjudged, and the court of appeal does have jurisdiction to reverse, revise, or modify the judgment (as long as the appeal was filed within the time limit for appealing devolutively)." *Baton Rouge Bank & Trust Co. v. Coleman*, 582 So.2d 191, 192 (La. 1991)(per curiam).

It is undisputed that the attempted suspensive appeal was converted to a devolutive appeal because defendants' filing met the governing time delays.  The devolutive appeal is currently pending before the Louisiana Fifth Circuit Court of Appeals, who

will hear oral argument in August 2021. *See* Rec. Doc. 20-1 at 7, n.14. Although not the desired method of appeal, defendants nevertheless sustained United's right to challenge the underlying judgment by timely filing a devolutive appeal that could potentially result in a reversal. Therefore, United likewise failed to plead the legal cause element of its negligence claim, and the Rule 12(b)(6) motion has merit.

### E. **Rule 12(e) More Definite Statement**

Defendants moves in the alternative for a more definite statement under Rule 12(e). Rec. Doc. 20-1 at 22. Federal Rule of Civil Procedure 12(e) allows a party to request a more "definite statement" of a complaint when it is "so vague or ambiguous that the party cannot reasonably prepare a response." *Bowie v. Hodge*, No. 20-1218, 2020 WL 3104799, at *3 (E.D.La. June 11, 2020). Rule 12(e) motions are generally disfavored, in that "in view of the great liberality of Federal Rule of Civil Procedure 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D.La. 2006)(citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)).

District courts are given "considerable discretion" in deciding whether to grant a Rule 12(e) motion. *Bowie*, 2020 WL 3104799, at *3. A complaint is considered "inadequate" if it fails to "(1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Id.* (citing *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)). "A court should not dismiss a claim that fails to meet the pleading requirements without giving leave to amend unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so." *Burress v. Chase Card*, No. 3:19-cv-01198-S-BT, 2020 WL 1216703, at *1 (N.D. Tex. Feb. 18, 2020) (internal quotes omitted) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)).

Should this Court deny their motion to dismiss, defendants move in the alternative for a more definite statement, arguing that plaintiff's claims are ambiguous as to (1) the at-issue period of representation; (2) the measure of damages sought; and (3) the nexus between the damages asserted and the alleged negligent acts or omissions. Rec. Doc. 20-1 at 23. Plaintiff argues that each claim is "clearly discernable' from a reading of the complaint. Rec. Doc. 23 at 23-24.

First, we find that it is clearly discernable from the complaint as to when the at-issue period of representation occurred.  On or about January 15, 2018, QEO contacted defendants, seeking their services to represent plaintiff in the underlying action.  Rec. Doc. 1 at 3.  On December 10, 2020, the parties' attorney-client relationship ended when the state court granted defendants' motion to withdraw and new counsel was substituted. *Id.* at 5.  Because this Court was able to ascertain the defendants' period of representation from the complaint, defendants are not entitled to a more definite statement in this regard.

Second, we find that the measure of damages sought by plaintiff are also clearly discernable from the complaint. Plaintiff expressly seeks to recover the value of the $1,900,000 excess judgment paid to its judgment creditor following defendants' failure to timely post the appeal bond.  Rec. Doc. 1 at 10.  Moreover, while asserted in plaintiff's opposition, the complaint lacks any mention of a claim for mental anguish damages and attorney's fees.  Nevertheless, because United failed to plead sufficient facts to demonstrate causation between the purported negligence and its damages, the futility of curing the pleading defects would render this aspect of the 12(e) motion moot.

Lastly, the complaint is undoubtedly clear in its allegations that defendants' collective failure to timely file the surety bond authorized the underlying plaintiff to initiate collection efforts

against United's insured, which in turn forced United to satisfy the entire excess judgment. Rec. Doc. 1 at 9-10. However, as previously discussed, United has not meet its burden in establishing causation between the acts of negligence and its damages, and any further attempts to cure such defects will likely be unsuccessful. Therefore, because United does not have a cognizable claim for legal malpractice, we find that defendants' alternative Rule 12(e) motion is moot.

New Orleans, Louisiana this 26th day of August, 2021

SENIOR UNITED STATES DISTRICT JUDGE